UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

MICHAEL P. CHURCH,                                     CIVIL NO. 05-678 (PJS/JSM)

       Plaintiff,

v.                                                                         REPORT AND
                                                                            RECOMMENDATION
JO ANNE B. BARNHART,
Commissioner of Social Security,

       Defendant.


The above matter is before the undersigned United States Magistrate Judge on plaintiff's Motion for Summary Judgment [Docket No. 22] and Defendant's Motion for Summary Judgment [Docket No. 25].  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c).

For the reasons discussed below, it is recommended that plaintiff's Motion for Summary Judgment [Docket No. 22] be GRANTED in part and DENIED in part, defendant's Motion for Summary Judgment [Docket No. 25] be DENIED, and that the decision of the Administrative Law Judge be vacated and the case be remanded to the Commissioner for further proceedings consistent with this Report and Recommendation.

## I.      PROCEDURAL BACKGROUND

Plaintiff applied for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., on June 2, 2002.  (Tr. 109-11).  Plaintiff alleges

a disability, starting November 24, 1998, due to back problems.  (Tr. 109-11, 139).  At

the hearing, plaintiff amended his onset date to December 1, 2001.  (Tr. 37-38, 44, 77).

The Social Security Administration ("SSA") denied plaintiff's application initially

and upon reconsideration.   (Tr. 83-85, 86-88).   Plaintiff then filed a request for a

hearing, and on July 15, 2003, a hearing was held before Administrative Law Judge

("ALJ") William S. Herbert.  (Tr. 24, 100).   On September 19, 2003, the ALJ issued a

decision to grant plaintiff benefits from December 1, 2001, through June 1, 2003, and to

deny plaintiff benefits after June 1, 2003.  (Tr. 21).  Plaintiff requested review from the

Appeals Council.  (Tr. 10-11).  On March 10, 2005, the Appeals Council denied his

request for review.  (Tr. 7-9).  Denial of review by the Appeals Council made the ALJ's

decision the final decision of the Commissioner in this case.  (Tr. 7).  See 42 U.S.C.

§ 405(g).

Plaintiff sought review of the ALJ's decision by filing a Complaint with this Court

pursuant to 42 U.S.C. § 405(g).  [Docket No. 1].  The parties now appear before the

Court on plaintiff's Motion for Summary Judgment [Docket No. 22] and defendant's

Motion for Summary Judgment [Docket No. 25].

## II.    PROCESS FOR REVIEW

Congress has prescribed the standards by which Social Security disability

benefits may be awarded.   "The Social Security program provides benefits to people

who are aged, blind, or who suffer from a physical or mental disability."   42 U.S.C.

§ 1382(a); Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992).  The Social Security

Administration shall find a person disabled if the claimant "is unable to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment." 42 U.S.C. § 1382c(a)(3)(A).  The claimant's impairments must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."   42 U.S.C. § 1382c(a)(3)(B).   The impairment must last for a continuous period of at least 12 months or be expected to result in death.   42 U.S.C. § 1382c(a)(3)(A); see also 20 C.F.R. §§ 404.1509, 416.909.

## A.   Administrative Law Judge Hearing's Five-Step Analysis

If a claimant's initial application for benefits is denied, he or she may request reconsideration of the decision.  20 C.F.R. §§ 404.909(a)(1), 416.1409(a).  A claimant who is dissatisfied with the reconsidered decision may obtain administrative review by an ALJ.  42 U.S.C. §§ 405(b)(1), 1383 (c)(1); 20 C.F.R. §§ 404.929, 416.1429, 422.201 et seq.  To determine the existence and extent of a claimant's disability, the ALJ must follow a five-step sequential analysis, requiring the ALJ to make a series of factual findings regarding the claimant's work history, impairment, residual functional capacity, past work, age, education and work experience.  See 20 C.F.R. §§ 404.1520, 416.920; see also Locher, 968 F.2d at 727.  The Eighth Circuit described this five-step process in Morse v. Shalala, 16 F.3d 865, 871 (8th Cir. 1994):

> The first step asks if the claimant is currently engaged in substantial gainful employment.  If so, the claimant is not disabled.  If not, the second step inquires if the claimant has an impairment or combination of impairments that significantly limits the ability to do basic work activities.  If not, the claimant is not disabled.  If so, the third step is whether the impairments meet or equal a listed impairment; if they do, the claimant is disabled.  The fourth step asks if the claimant's impairments prevent [him] from doing past relevant work.  If the claimant can perform past relevant work, [he] is not disabled.  The fifth step involves the question of whether

the claimant's impairments prevent [him] from doing other work.  If so, the claimant is disabled.

### B.    Appeals Council Review

If the claimant is dissatisfied with the ALJ's decision, he or she may request review by the Appeals Council, though review is not automatic.  20 C.F.R. §§ 404.967-404.982, 416.1467-416.1492.  The decision of the Appeals Council (or of the ALJ, if the request for review is denied) is final and binding upon the claimant unless the matter is appealed to Federal District Court within 60 days after notice of the Appeals Council's action.  42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. §§ 404.981, 416.1481.

### C.    Judicial Review

Judicial review of the administrative decision generally proceeds by considering the decision of the ALJ at each of the five steps.  The Court is required to review the administrative record as a whole and to consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of plaintiff's impairments.

6. The testimony of vocational experts, when required, which is based upon a proper hypothetical question which sets forth plaintiff's impairments.

Cruse v. Bowen, 867 F.2d 1183, 1885 (8th Cir. 1989 (citing Brand v. Secretary of HEW, 623 F.2d 523, 527 (8th Cir. 1980)).

The review by this Court is limited to a determination of whether the decision of the ALJ is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison v. NLRB, 305 U.S. 197, 229 (1938)); see also Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994).  "The substantial evidence test employed in reviewing administrative findings is more than a mere search of the record for evidence supporting the [Commissioner's] findings."  Gavin v. Heckler, 811 F.2d 1195, 1999 (8th Cir. 1987).  "'Substantial evidence on the record as a whole,' . . . requires a more scrutinizing analysis."  Id.  In reviewing the administrative decision, "'[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'"  Id. (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)).

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact.  Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).  The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence.  Culbertson, 30 F.3d at 939.  The Court should not reverse the Commissioner's finding merely because evidence may exist to support the opposite conclusion.  Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994); see also Woolf, 3 F.3d at 1213 (the ALJ's determination must be affirmed, even if substantial evidence would support the opposite finding).  Instead, the Court must consider "the weight of the

evidence in the record and apply a balancing test to evidence which is contradictory." Gavin, 811 F.2d at 1199.

The claimant bears the burden of proving his or her entitlement to disability insurance benefits under the Social Security Act.   See 20 C.F.R. §§ 404.1512(a), 416.912(a); Thomas v. Sullivan, 928 F.2d 255, 260 (8th Cir. 1991).   Once the claimant has demonstrated he or she cannot perform prior work due to a disability, the burden of proof then shifts to the Commissioner to show that the claimant can engage in some other substantial, gainful activity.   Martonik v. Heckler, 773 F.2d 236, 238 (8th Cir. 1985).

## III.   DECISION UNDER REVIEW

### A.   The ALJ's Findings of Fact

Plaintiff, born April 1, 1958, was forty-five years old on the date of the ALJ's decision.  (Tr. 20).  Plaintiff has a high school education and no transferable skills to work within his residual functional capacity.  (Tr. 20).  Plaintiff alleged a disability due to degenerative disc disease of the lumbar spine, status post a fusion, with residual pain. (Tr. 16).

The ALJ concluded that from December 1, 2001, until June 1, 2003, plaintiff was under a disability and was entitled to Disability Insurance Benefits ("DIB") on the basis of his application of June 6, 2002.  However, beginning June 1, 2003, the ALJ found that plaintiff retained the capacity for work that exists in significant numbers in the national economy and that he is not under a "disability" as defined in Social Security Act (20 CFR § 404.1520(f)).  (Tr. 21).  The ALJ stated that he made the following findings based on the entire record:

1.  The claimant meets the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and was insured for benefits through March 21, 2002.  Therefore he was insured for benefits at the time he became disabled.

2.  The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.  The claimant is severely impaired by degenerative disc disease of the lumbar spine, status post a fusion, with residual pain.

4.  This medically determinable impairment equaled listing 1.04A of the listed impairments in Appendix 1, Subpart P, Regulation No. 4, from December 1, 2001, until June 1, 2003.  After June 1, 2003, the claimant had no impairments that met or equaled any of the Listings of Impairments.

5.  The undersigned finds that since June 1, 2003, the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6.  Since June 1, 2003, the claimant has retained the residual functional capacity to perform sedentary work; with lifting 10 pounds occasionally and 5 pounds frequently; standing and walking for up to 2 hours out of an 8 hour work day, with a sit-stand option every 30 minutes; sitting for up to 6 hours out of an 8 hour day; with only incidental balancing, stooping, kneeling, crouching, crawling, bending, or use of stairs.

7.  The claimant is unable to perform any of his past relevant work (20 CFR § 404.1565).

8.  The claimant is a "younger individual" (20 CFR § 404.1563).

9.  The claimant has a "high school education" (20 CFR § 404.1564).

10.  The claimant has no transferable skills to work within his residual functional capacity (20 CFR § 404.1568).

11.  Since June 1, 2003, the claimant has had the residual functional capacity to perform a significant range of sedentary work (20 CFR § 416.967).

12.  Since June 1, 2003, considering the types of work, which the claimant is still functionally capable of performing, in combination

with his age, education, and work experience, he can be expected to make a vocational adjustment to work which exists in significant numbers in the national economy.  Examples of such jobs include work as bench assembler and as an inspector.

13.   The claimant was not under a "disability," as defined in the Social Security Act, at any time since June 1, 2003 (20 CFR § 404.1520(f)).

(Tr. 21-22).

### B.   The ALJ's Application of the Five-Step Process

In reaching his findings, the ALJ made the following determinations under the five-step procedure.  (Tr. 14-31).  At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability.  (Tr. 16).

At the second step, the ALJ found that plaintiff was subject to severe impairments from degenerative disc disease of the lumbar spine, status post surgery, with residual pain.  (Tr. 16).  At the third step, the ALJ determined that plaintiff's impairments, from December 2, 2001, until June 1, 2003, equaled the requirements of section 1.04A of the Listings of Impairments.  (Tr. 16).  However, after June 1, 2003, the ALJ found that plaintiff's impairments no longer equaled any of the Listings of Impairments, and then proceeded to examine plaintiff's RFC.  (Tr. 16).  At the fourth step, the ALJ found that plaintiff was no longer capable to perform his past relevant work.  (Tr. 20).  At the fifth step, based on the testimony of the Vocational Expert ("VE"), the ALJ found that there are a significant number of jobs in the national economy which plaintiff could perform consistent with the RFC determined by the ALJ.  (Tr. 20).

### IV.   ISSUES UNDER REVIEW

In the present case, the ALJ determined that plaintiff maintained the following RFC:

> Since June 1, 2003, claimant has retained the residual functional capacity to perform sedentary work; with lifting 10 pounds occasionally and 5 pounds frequently; standing and walking for up to 2 hours out of an 8 hour day, with a sit-stand option every 30 minutes; sitting for up to 6 hours out of an 8 hour day; with only incidental balancing, stooping, kneeling, crouching, crawling, bending, or use of stairs.

(Tr. 21).

Plaintiff disagrees with this RFC determination.  In this regard, plaintiff asserted the ALJ erred (1) because the June 2003 Functional Capacity Evaluation ("FCE") does not support a finding of medical improvement or employability, and (2) because he improperly discounted plaintiff's testimony of incapacitating pain.  Specifically, plaintiff argued that the FCE, relied upon by the ME for his opinion that plaintiff had regained the ability to perform sedentary work by June 2003, unequivocally established that plaintiff could not sit for the period of time required by a sedentary job.  In addition, plaintiff asserted that the ALJ improperly disregarded substantial portions of the record, including critical portions of the FCE and plaintiff's testimony, in order to reach his conclusion that plaintiff could perform sedentary work as of June 2003.  In his motion for summary judgment, plaintiff asked this Court to reverse the Commissioner's final decision and award benefits from June 1, 2003, or in the alternative, to remand the matter back to the Commissioner for further proceedings consistent with proper legal principles.  In its cross motion for summary judgment, the Commissioner asked this Court to deny plaintiff's motion for summary judgment and affirm the decision of the Commissioner denying plaintiff's claim for disability benefits.

## V.   PLAINTIFF'S RFC

A claimant's RFC is what he or she can do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1).  The ALJ must determine a claimant's RFC by considering

the combination of the claimant's mental and physical impairments.  See Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).  It is the claimant's burden, not the Commissioner's, to prove the RFC.  Id. at 1218 (citing Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995)).  In determining a claimant's RFC, the ALJ must consider all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his or her limitations.  Id.

The ALJ "bears the primary responsibility for assessing a claimant's [RFC] based on all relevant evidence."  Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000). Nonetheless, the RFC determination must be supported by "medical evidence that addresses claimant's 'ability to function in the workplace.'"  Baldwin v. Barnhart, 349 F.3d 549, 556 (8th Cir. 2003) (quoting Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000)).  The ALJ is not limited to consideration of medical evidence, "but is required to consider at least some supporting evidence from a professional."  Baldwin, 439 F.3d at 556 (citing 20 C.F.R. § 404.1545(c)).  If necessary, the ALJ should solicit opinions from claimant's treating physicians, or seek consultative examinations to help assess claimant's RFC.  Nevland, 204 F.3d at 858.

### A.    Functional Capacity Evaluation

Plaintiff asserted that Dr. Andrew M. Steiner, the Medical Expert ("ME") determined that plaintiff had regained the ability to perform sedentary work by June 2003, based solely on the FCE; yet the FCE does not support such a finding.  Pl.'s Mem. at 19.  Further, plaintiff argued that the FCE performed on June 5 and 6, 2003 failed to demonstrate the kind of medical improvement required to terminate benefits. Id.

In opposition, the Commission argued that based on the FCE obtained in June 2003 and the objective medical record, the ME properly testified that plaintiff no longer medically equaled listing 1.04A.   Def.'s Mem., at 16 (citing Tr. 40-42).   Further, the Commission argued that the ME's opinion regarding plaintiff's functional capacity is even more restrictive than the functional capacity assessment completed in June 2003.

On June 5 and 6, 2003, plaintiff participated in a Functional Capacity Evaluation, performed by Jeff Kittelson, Physical Therapist.  (Tr. 323).  Kittelson noted that plaintiff's pain was well under control, rated at 5-6 out of 10, on both days of testing, and that pain did not limit plaintiff's performance on either day.  (Tr. 323).  Kittelson reported that on day two plaintiff suffered from an episode of significant leg pain that responded well to brief walking movement of less than three minutes.  (Tr. 323).  After that, plaintiff was able to resume testing quickly and did not limit his performance at that point or thereafter.  (Tr. 323).

As a result of the two days of testing, Kittelson determined that within an eight-hour workday, plaintiff had a full capacity to sit for two hours, stand for two hours, and walk for five hours.  (Tr. 325).  Kittelson also determined that plaintiff could lift floor to waist 20 pounds frequently and 10 pounds continuously, lift waist to overhead 20 pounds frequently and 5 pounds continuously, lift to waist level 20 pounds frequently and 10 pounds continuously, carry 25 pounds frequently and 11 pounds continuously with either the left or right upper extremity, and that he could carry 25 pounds frequently and 10 pounds continuously at waist level.  (Tr. 326).  Additionally, Kittelson determined that plaintiff could occasionally repetitively squat, perform a deep static crouch, and kneel, and frequently perform forward bending or sitting, forward bending or standing,

crawl, climb height, overheard work above shoulder level, balance, rotate while sitting, and rotate while standing. (Tr. 325). Kittelson noted that plaintiff experienced significant pain after sitting or standing 7 to 8 minutes and would need to move or have a brief break. (Tr. 326). Kittelson also indicated that his results were reliable based on plaintiff's maximum effort. (Tr. 325). On June 24, 2003, Dr. Matthew J. Eckman, plaintiff's treating physician, signed the FCE, acknowledging that he approved the information. (Tr. 326).

On June 10, 2003, Dr. Eckman completed a Report of Work Ability for plaintiff. (Tr. 447). In the report, Dr. Eckman noted that plaintiff needed vocational rehabilitation and that he could return to work with the restrictions as noted in the FCE of June 5 and 6, 2003. (Tr. 447).

On July 8, 2003, Dr. Eckman completed another Report of Work Ability for plaintiff. (Tr. 508). Dr. Eckman reported that plaintiff suffered an exacerbation L-strain. Dr. Eckman ordered x-rays and a facet injection at L4-5. (Tr. 508). Dr. Eckman noted that this was a result of a work-related injury and that plaintiff would be off work until reevaluated. (Tr. 508).

At the hearing on July 15, 2003, the ME testified that he would not limit plaintiff's time on his feet, but would limit lifting to the sedentary level. (Tr. 68). The ME also testified that he would limit bending, twisting, stooping, kneeling, crawling, crouching, and climbing to an occasional basis. Further, the ME found that positional changes would be appropriate. (Tr. 69). Apart from positional changes, the ME testified that he would not limit plaintiff's sitting. (Tr. 69).

Plaintiff's attorney asked the ME whether he had considered that Dr. Eckman took plaintiff off work on July 10, 2003, and that plaintiff had other problems that had developed after the FCE.  The ME testified:

> Yes, I did consider all those things you have mentioned, and I've also considered the -- what's objectively in the record, as far as abilities and findings.  And in spite of that, I think the record will support a kind of residual that I have described.  I did note, on Exhibit 10-F, Dr. Eckmann's statement about off work until reevaluated, I'm not exactly sure what off work means in this context, but I didn't see anything objective in the record that would preclude the kinds of activities that I have described for the judge --

(Tr. 41-42).

Under the regulations, sedentary work is defined as work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 416.967(a). At the sedentary level of exertion, "occasionally" means "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday."  SSR 83-10.  "By its very nature, work performed primarily in a seated position entails no significant stooping.  Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions."  Id.

Here, the only medical evidence in the record bearing on plaintiff's ability to sit as of June 2003 was Dr. Eckman's Report of Work Ability dated June 10, 2003, in which Dr. Eckman stated that plaintiff could return to work with the restrictions as noted in the

FCE of June 5 and 6, 2003.  (Tr. 447).   The FCE performed by Kittelson stated that plaintiff could sit just two hours of an eight-hour day.  (Tr. 325).   Notwithstanding that limitation, the ALJ found that since June 1, 2003, plaintiff retained the residual functional capacity to perform sedentary work based on his ability, among other restrictions, to sit for up to 6 hours out of an 8 hour day.  (Tr. 21).  However, there are no facts, much less medical opinion, to support a finding that plaintiff could sit for 6 hours out of an 8 hour day.  Lacking such medical support, this Court finds that the record does not provide sufficient information to support the ALJ's assessment of plaintiff's RFC.  See Lauer v. Apfel, 245 F.3d 700, 703-04 (8th Cir. 2001).[1]

As the 8th Circuit reasoned in Lauer:

> Mr. Lauer contends that the ALJ's conclusion that his mental impairments limited only the degree to which he was able to interact with the public was not sufficiently supported by medical evidence, and that the ALJ improperly substituted his own lay opinion for the opinions of treating or examining professionals. See Pratt v. Sullivan, 956 F.2d 830, 834 (8th Cir. 1992) (per curiam). Although the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence," Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir.2000), we have also stated that a "claimant's residual functional capacity is a medical question," Singh, 222 F.3d at 451. "[S]ome medical evidence," Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace," Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000).

> Therefore, although in evaluating Mr. Lauer's RFC, see 20 C.F.R. § 404.1545(c), the ALJ was not limited to considering medical evidence, we believe that the ALJ was required to consider at least some supporting evidence from a professional. Cf. Ford v. Secretary of Health and Human Services, 662 F.Supp. 954 (W.D. Ark. 1987) (RFC was "medical

---

[1]      The ALJ gave significant weight to Dr. Eckman's statement in his June 10, 2003 report that plaintiff could return to work.  (Tr. 19).  But that statement does not lead to a finding that plaintiff could perform sedentary work because Dr. Eckman also said that plaintiff could return to work only within the restrictions stated in the FCE, and the FCE limited plaintiff's ability to sit to 2 hours in a day.

question," id. at 955, and medical evidence was required to establish how claimant's heart attacks affected his RFC, id. at 956), cited with approval in Nevland, 204 F.3d at 858.

Id.

If the ALJ did not believe that Dr. Eckman's report provided an accurate, current and reliable basis for determining plaintiff's RFC, then the ALJ should not have simply rejected Dr. Eckman's report.   Instead, the ALJ should have taken the actions prescribed at § 416.912(e) and (f) of the Regulations, in order to develop the record more fully.   In other words, the ALJ should have either gone back to Dr. Eckman and asked for a more complete explanation of plaintiff's limitations, in accordance with § 416.912(e), or alternatively, the ALJ should have sent plaintiff to another doctor for a complete consultative examination, in accordance with § 416.912(f).   See Nevland, 204 F.3d at 858; Bishop, 900 F.2d at 1263.   Because the ALJ did not take either of those actions, he did not fulfill his duty to fully develop the record in this case.

In summary, Dr. Eckman found, based on the FCE performed by Kittelson, that plaintiff could sit just two hours of an eight-hour day.   (Tr. 325).   Nevertheless, the ALJ, relying on the opinion of the ME, who stated that he would not limit plaintiff's sitting at all based on "what's objectively in the record," determined that plaintiff could sit 6 out of 8 hours as of June1, 2003.   (Tr. 41-42).   The problem with the ME's opinion, and the ALJ's reliance on it, is that there is no medical evidence in the record to support such an opinion.   Lacking such evidence, the Court finds that the ALJ's RFC determination—i.e. that plaintiff could sit for six hours in an 8-hour day starting June 1, 2003 is not supported by the current record.   See Lauer, 245 F. 3d at 706 ("We believe that to determine Mr. Lauer's RFC, however, the ALJ had to address complex medical issues

that could be resolved only with professional assistance, and that the professional opinions in the record [of a non-examining source and the testifying neutral medical expert] do not support the ALJ's assessment of the degree to which the mental impairments affect Mr. Lauer's RFC. We therefore conclude that the ALJ's determination of Mr. Lauer's RFC is not supported by substantial evidence."); Nevland, 204 F. 3d at 858 ("'An administrative law judge may not draw upon his own inferences from medical reports.'" (citation omitted)). Cf. Jenkins v. Apfel, 196 F.3d 922, 925 (8th Cir. 1999) (rejecting non-treating physician's RFC assessment, where it conflicted with the assessment of the treating physician and there was no other evidence in the record to support the ALJ's residual-functional-capacity finding.). As such, the Court concludes that plaintiff's RFC that he can perform sedentary work is not supported by substantial evidence in the record.

### B.    Plaintiff's Subjective Testimony

At the hearing, plaintiff testified as follows: The chief problem that keeps plaintiff from going back to work is pain in his back and leg. (Tr. 48). He also has to lay down about three times a day for about a half-hour, and he cannot predict when he will have to do this. (Tr. 48, 64). Plaintiff stated that the benefits he received from surgery have gone away, and his symptoms are back and affect him the same way as they did pre-surgery. (Tr. 48-49). Plaintiff described that he always has pain in his back, and every once in a while, he gets sharp pains going down to his toes on his left leg. (Tr. 49). When he has pain in his buttocks, it gets numb, and that is when his leg starts to hurt. (Tr. 50). The pain in his back is always there, but sometimes it is worse than other times. (Tr. 50). The ALJ then described the way plaintiff was sitting in his chair:

> Do -- now, you're sitting there, and you were sitting there earlier, before
> we took a break.  At both times, you've been sitting in the same, I'm going
> to say awkward posture.  You are -- and I'm going to try to describe it, so
> that this can be on the tape record, but you're sitting pretty central in the
> chair, with your arms and elbows pretty much on the arms of the chair, but
> your right shoulder is noticeably low, and your left shoulder is noticeably
> high, and your head is tilted toward the left shoulder.

(Tr. 50).  Plaintiff testified that this was not his normal sitting in a chair posture, but that

he was more comfortable sitting that way.  (Tr. 50).  Plaintiff was basically favoring his

left leg so he did not get pain down it.  (Tr. 50).  Plaintiff testified that when he gets

sharp pains in his back he must move.  (Tr. 51).

Plaintiff testified that there was not one daily posture (lying down, sitting in a

chair, standing in place, or walking) that works best for him all around.  (Tr. 51).  Plaintiff

testified that laying down, flat on his back on a hard floor helped him for a little while.

Plaintiff testified that stretching did not help him, and neither did ice, but sitting in the hot

tub for a half hour in the morning did help him by loosening up his muscles.  (Tr. 52-

53).  Plaintiff stated that he could sit longer than stand and he needed to stand to break

up sitting, and sit to break up standing.  (Tr. 54).  If he cannot sit, he prefers walking to

standing.  (Tr. 54).  Plaintiff testified that he has never been in a position where he was

standing and needed to sit, but there was no place to sit.  (Tr. 54).  If plaintiff was asked

to stand to do a medium load of dishes, and he did them, his back would kill him.  (Tr.

54).  Plaintiff testified that he could carry a gallon of milk, by the handle, with either is

right or left hand, at chest level, to the kitchen counter.  (Tr. 55-56).  Plaintiff testified

that he could also pour a glass of milk for everyone at the table from a seated position.

(Tr. 56).

Plaintiff testified that he did not think he could stand and carry 10 pounds for a half hour, because he would have a flare up, and problems with his back and leg. (Tr. 56). If plaintiff were asked to sit in a chair about an hour to an hour-and-a-half to peel potatoes, he would have to get up and move around. (Tr. 57). If he was not permitted to get up and move around, he would get pain down his leg and his back would start throbbing. (Tr. 57-58).

The most strenuous thing plaintiff did around the house, was sweep the steps with a broom when it is snowing. (Tr. 58). The broom is normally higher than where plaintiff is standing. (Tr. 58). Plaintiff could also sweep the sidewalk that was below the steps for a little bit at a time. (Tr. 58). Plaintiff has not tried to shovel the sidewalk, but surmised that he would be laid up for a few hours if he had to do it, because it would accentuate the pain on his left side. (Tr. 59). He would likely need to lie down and then sit in a hot tub. (Tr. 59).

Plaintiff stated his normal pain level was about a 5 or 6 out of 10, sometimes worse. (Tr. 60). When the pain flares up, the pain level was about an 8 or 9 out of 10. (Tr. 60). The pain was a 10 when the pain goes down his leg. (Tr. 60). When pain was at a 9 or 10 out of 10, plaintiff tried to walk to get rid of the pain. (Tr. 60). The pain normally went back down to a 5 out of 10. (Tr. 61). Plaintiff testified that bending, squatting, lifting, and sitting too long would cause pain of 9 or 10 out of 10 to occur. (Tr. 61). Plaintiff testified that during the hearing, which had been going on for about one hour, he had one sit up and go outside break where he stood, and his pain was about a 5 out of 10. (Tr. 61). Plaintiff also stated that he was in pain and that is why is always moving. (Tr. 61).

Plaintiff testified that he could walk a couple of blocks, after that, his leg went numb and he needs to sit. (Tr. 63).

Plaintiff took Ambien at night to sleep. When he woke up in the morning he took Lortab 10. (Tr. 53). He took 6 to 8 of the Lortab 10s every day. (Tr. 64). Plaintiff also has a prescription of Flexeril for muscle spasms that he takes twice a week. (Tr. 65). He also took ibuprofen once in a while. (Tr. 65). Flexeril made plaintiff feel foggy and sleepy for a couple hours. (Tr. 66). Otherwise, plaintiff did not present any side effects to his medications. (Tr. 65-66). Plaintiff stated that he does not drive when he takes Flexeril or the Lortab 10s. (Tr. 66).

Failure to give some consideration to a claimant's subjective complaints is reversible error. Brand v. Secretary of the Dept. of Health, Educ. and Welfare, 623 F.2d 523, 525 (8th Cir. 1980). "[A] headache, back ache, or sprain may constitute a disabling impairment even though it may not be corroborated by an x-ray or some other objective finding." Id. An ALJ must consider a claimant's subjective complaints, regardless of whether they are corroborated by objective medical findings. Id.; see also Cline v. Sullivan, 939 F.2d 560, 566 (8th Cir. 1991). On the other hand, "we will not substitute our opinions for that of the ALJ, who is in a better position to assess a claimant's credibility." Id. (citing Woolf, 3 F.3d at 1213).

In considering a claimant's subjective complaints of disability, the ALJ must assess the claimant's credibility, applying the factors set forth in Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984) (vacated on other grounds by Bowen v. Polaski, 476 U.S. 1167 (1986)). The Polaski factors require the ALJ to give full consideration to all the evidence presented relating to a claimant's subjective complaints, including prior

work record, and observations of third parties and treating and examining physicians relating to such matters as:

    1.     the claimant's daily activities;

    2.     the duration, frequency, and intensity of the pain;

    3.     precipitating and aggravating factors;

    4.     dosage, effectiveness, and side effects of medication;  and

    5.     functional restrictions.

Id.; see also Cox v. Apfel, 160 F.3d 1203, 1207 (8th Cir. 1998) (same); Baumgarten v. Chater, 75 F.3d 366, 368 (8th Cir. 1996) (same);  Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996) (same); Cline, 939 F.2d at 565 (same); Callison v. Callahan, 985 F. Supp. 1182, 1186 (D. Neb. 1997) (same).  "Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints." Cox, 160 F.3d at 1207.

"An ALJ may discount a claimant's subjective complaints of pain only if there are inconsistencies in the record as a whole."  Johnson, 87 F.3d at 1017 (citing Smith v. Shalala, 987 F.2d 1371, 1374 (8th Cir. 1993)).  "The ALJ may discount a claimant's allegations of pain when he explicitly finds them inconsistent with daily activities, lack of treatment, demeanor, and objective medical evidence."  Jones v. Chater, 86 F.3d 823, 826 (8th Cir. 1996); see also Cox, 160 F.3d at 207.  The ALJ may not disregard a claimant's subjective complaints solely because he or she believes the objective medical evidence does not support them.  Griffon v. Bowen, 856 F.2d 1150, 1154 (8th Cir. 1988).

If the ALJ rejects a claimant's complaint of pain, "the ALJ must make an express credibility determination detailing his reasons for discrediting the testimony."   Cline v. Sullivan, 939 F.2d 560, 565 (8th Cir. 1991).  "It is not enough that inconsistencies may be said to exist, the ALJ must set forth the inconsistencies in the evidence presented and discuss the factors set forth in  Polaski when making credibility determinations." Cline, 939 F.2d at 565.

Plaintiff argued that the ALJ erred by failing to afford credibility to his subjective complaints of pain.   In this regard, plaintiff asserted that the ALJ failed to cite in his decision to any statements or observations by treating physicians or past statements by plaintiff that would support the ALJ's statement that he considered and evaluated all the evidence.  See Pl.'s Mem., at 20-21.

In opposition, the Commission argued that the ALJ's decision cited specific evidence, including the FCE, in support of his conclusion that plaintiff was not credible. The Commission further argued that no evidence of record, including the FCE, supported the extreme limitations plaintiff alleged.  Def.'s Mem., at 22.

In the decision, the ALJ acknowledged that because plaintiff's complaints regarding his functional limitations were subjective, the ALJ had assessed the record in accordance with Polaski, SSR 96-7p, and 20 C.F.R. 404.1519 and 416.929 (1991).  (Tr. 16).  The ALJ then concluded that plaintiff was not credible in claiming that he was incapable of all work, because the medical evidence since June 2003 failed to support plaintiff's allegations of total disability, and there were inconsistencies in the record as a whole.  (Tr. 17, 19).   In addition, the ALJ relied upon plaintiff's testimony that he did not suffer any ongoing side effects from medication, and his work history.  Tr. 19.

The problem with the ALJ's conclusions, like the problem with his finding that plaintiff could sit for 6 out an 8-hour day, is that the ALJ did not explain what it was about the medical record starting in June 2003 that lead him to reject plaintiff's complaints of disabling pain from that time forward.   As discussed above, the only medical evidence bearing on plaintiff's medical condition from June 2003 to the date of the decision, were the two reports of Dr. Eckman.   In the first report, dated June 10, 2003, Dr. Eckman stated that plaintiff could return to work with the restrictions as noted in the FCE of June 5 and 6, 2003, which had limited plaintiff's ability to sit to two hours. (Tr. 447).   In the second report, dated July 8, 2003, Dr. Eckman stated that plaintiff had suffered an exacerbation L-strain and that plaintiff would be off work until reevaluated. (Tr. 508).   There is nothing about either report, which could lead the ALJ to conclude that the medical evidence supported a determination that plaintiff could withstand a job on a fulltime basis at the sedentary level starting in June 2003.

Second, while the ALJ said he was evaluating the record in accordance with the Polaski factors, there is very little in the decision to support that statement.   For example, the ALJ neither elicited nor discussed plaintiff's daily activities.   A "claimant's daily activities is one factor to be considered in evaluating the credibility of a claimant's subjective allegations of pain."   Cline, 939 F.2d at 565.   Similarly, the ALJ never addressed plaintiff's assertions that he had to lay down about three times a day for about a half-hour, and he could not predict when he would have to do this, and that sitting too long would cause pain of 9 or 10 out of 10 to occur.   (Tr. 48, 61, 64). Consequently, the ALJ failed to address the second or third Polaksi factors, i.e., the

duration, frequency, and intensity of the pain, precipitating and aggravating factors, much less how they were inconsistent with plaintiff's claim of total disability.

Third, in addressing the side effects of medication, the ALJ relied upon plaintiff's testimony that he did not suffer any ongoing side effects from medication, but the ALJ did not consider plaintiff's testimony that Flexeril made him feel foggy and sleepy for a couple hours, and that he did not drive when he takes Flexeril or the Lortab 10s.  (Tr. 19, 65-66).

Instead, it appears to this Court that the ALJ relied heavily on the medical records generated prior to June 2003 to reject plaintiff's subjective complaints of pain. (Tr. 323-26, 331, 360-63).  However, in addition to the fact that the ALJ cannot disregard a claimant's subjective complaints solely because he or she believes the objective medical evidence does not support them (Griffon v. Bowen, 856 F.2d 1150, 1154 (8th Cir. 1988)), these medical records are not germane to ALJ's conclusion that as of June 2003, plaintiff was no longer completely disabled.  This is because the ME and the ALJ had already determined that these medical records lead to the conclusion that plaintiff was suffering from a medically determinable impairment equaling listing 1.04A of the listed impairments from December 1, 2001 through June 1, 2003.

In summary, the ALJ's decision to discredit plaintiff's subjective complaints of pain based on the medical records and because of inconsistencies in the record as a whole was neither supported by the record, nor described with sufficient specificity to support his decision.  See Jones v. Chater, 86 F.3d 823, 826 (8th Cir. 1996) (finding that "[t]he ALJ may discount a claimant's allegations of pain when he explicitly finds them inconsistent with daily activities, lack of treatment, demeanor, and objective

medical evidence"); Cline, 939 F.2d at 565 (concluding that if the ALJ rejects a claimant's complaint of pain, "the ALJ must make an express credibility determination detailing his reasons for discrediting the testimony[,]" set forth "the inconsistencies relied upon by the ALJ in disbelieving . . . allegations of pain[,]" and evaluate credibility "according to the factors set forth in Polaski").

## V.   CONCLUSION

For the reasons discussed above, the Court concludes that the ALJ's decision to deny plaintiff's application for SSI benefits cannot be upheld.  Consequently, the ALJ must fulfill his responsibility to fully develop and explain the record in the manner prescribed by the SSA Regulations and Eighth Circuit case law.

Therefore, it is recommended that plaintiff's motion for summary judgment be granted in part and denied in part.  Plaintiff's request for an immediate award of benefits should be denied.  However, the ALJ's decision should be vacated.  It is also recommended that the defendant's motion for summary judgment be denied, and that this case be remanded for further administrative proceedings.  On remand, the ALJ should be directed to do the following:

First, the ALJ should give full consideration to the opinions of Dr. Eckman in determining plaintiff's RFC.

Second, after giving full consideration to the opinions of Dr. Eckman, if the ALJ does not believe that that they provide an accurate, current and reliable basis for determining plaintiff's RFC, then the ALJ shall solicit further information from Dr. Eckman, or send plaintiff to another doctor for a complete consultative examination, or do both.

Third, If the ALJ still believes, after considering the new, fully-developed, medical record, that the opinions of plaintiff's treating physicians and plaintiff's subjective complaints of pain should be discounted, then he shall explain his position on those matters in light of the new record.

Finally, because the hypothetical questions posed to the vocational expert were based upon a faulty determination of plaintiff's RFC, the vocational expert's answers to those questions cannot constitute sufficient evidence that plaintiff was able to engage in substantial gainful employment.  See Cox v. Apfel, 160 F.3d 1203, 1207 (8th Cir. 1998). Consequently, if the ALJ revises his final RFC determination, he should solicit new testimony from a vocational expert in order to determine whether, at step five of the evaluation process, there are any jobs that plaintiff could perform given the ALJ's post-remand RFC determination.  See Jenkins v. Apfel, 196 F.2d 922, 925 (8th Cir. 1999) (where a vocational expert's opinion is predicated on a faulty RFC determination, the ALJ cannot rely on that opinion; Nevland, 204 F.3d at 858 (same).

## VI.    RECOMMENDATION

For the reasons set forth above, this Court finds that the decision by the ALJ to deny plaintiff disability benefits is supported by substantial evidence on the record as a whole.  THEREFORE, IT IS RECOMMENDED THAT:

1.    Plaintiff's Motion for Summary Judgment [Docket No. 22] be GRANTED in part and DENIED in part.

2.    Defendant's Motion for Summary Judgment [Docket No. 25] be DENIED.

3.    The decision of the Administrative Law Judge be vacated and the case be

remanded to the Commissioner for further proceedings consistent with this

Report and Recommendation.

Dated:        August 9, 2006

_s/ Janie S. Mayeron_
JANIE S. MAYERON
United States Magistrate Judge

Pursuant to Local Rule 72.1(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **August 28, 2006** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.